# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KENT JAY GOLDY,

                Petitioner,                    Case Number: 06-CV-10546

v.                                        HONORABLE ARTHUR J. TARNOW

ERICA TIERNEY, ET AL.,

                Respondent.

_____/

## OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Kent Jay Goldy has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who was serving a five-year term of probation at the time he filed his petition, challenges two firearms-related convictions on the ground that he received ineffective assistance of counsel. The Court finds that Petitioner received ineffective assistance of counsel and suffered resulting prejudice because: (i) trial counsel failed to argue for the exclusion of damaging impeachment testimony under the relevant Michigan court rule, resulting in Petitioner deciding not to testify in his own defense; and (ii) trial counsel failed to object to a jury instruction which did not convey the intent necessary for a finding of guilt. Therefore, the Court grants the petition.

## I. Background

Petitioner's convictions arise from events that occurred on the morning of July 23, 2001, in the City of Farmington Hills, Michigan, at Petitioner's then-employer, Mahle Technologies (Mahle). Prior to the morning of July 23, 2001, a representative from Mahle contacted the Farmington Hills Police Department because Mahle planned to terminate Petitioner's

employment and desired police presence when the news was delivered to Petitioner.

Farmington Hills Police Detective David Loe testified that he responded to Mahle's request for a police presence. Detective Loe arrived at Mahle's offices on the morning of July 23, 2001. He joined Petitioner in a conference room and inquired whether Petitioner had any weapons on him. Petitioner said he did not, which Detective Loe and his partner confirmed. Petitioner stated that he had a gun in his vehicle, because he planned to transport the gun to a gun shop for repairs. Detective Loe testified that he received permission to go through Petitioner's vehicle. In the trunk, Detective Loe found a .45 caliber semi-automatic pistol with a loaded magazine, but no shell in the chamber.

Detective Loe testified that he inquired whether Petitioner had any weapons in his home. Petitioner replied that he did. Petitioner gave Detective Loe permission to search his home. Detective Loe found a "Tech .22" pistol in Petitioner's home and a device fastened to the barrel, which Detective Loe characterized as a silencer. Petitioner informed Detective Loe that it was a barrel extender, not a silencer.

Alfred Houde testified as a firearms expert for the prosecution. He testified that the device on the Tech .22 pistol was a silencer, not a barrel extender. Houde testified that he measured the decibel level of the pistol with and without the extension device. With the device, the average decibel report was 115.8; without the device, the average report was 164.6 decibels.

The defense presented two expert witnesses to support the defense theory that the device on the Tech .22 pistol was a barrel extender (used for improved accuracy), not a silencer. Steven Beane testified as an expert in the measurement of sound. He testified that, properly calibrated,

the sound measuring device used by Houde would not measure sound levels greater than 140 decibels (or 153 decibels if an "attenuator" were used; Houde did not explain an attenuator's function or whether it was used in Houde's testing).

David Townshend testified as a firearms expert. He testified that he did not understand how the measuring device used by Houde could register a reading of 164 decibels since the device only measures up to 150 decibels. He testified that he test-fired the pistol with and without the device. Without the device, the sound levels were in the mid-120 decibels range. With the device, the measurement was around 115 decibels. David Townshend also testified that it is a basic rule of law enforcement that any evidence should be photographed as it was found. The police photograph of Petitioner's pistol showed that the magazine was not in the gun.

The defense also presented witnesses to support the defense theory that the gun was in the trunk of Petitioner's vehicle for the lawful purpose of transporting it to a gun repair shop. Christopher Jones testified that he and Petitioner were target shooting the Friday preceding Petitioner's arrest (which occurred on a Monday) and that Petitioner's pistol was not working properly. Jones suggested a gun repair shop to which Petitioner could take the gun. He observed Petitioner place the unloaded pistol into a case and into the trunk of Petitioner's vehicle.

Petitioner did not testify in his own defense.

Following a jury trial in Oakland County Circuit Court, Petitioner was convicted of carrying a concealed weapon in a vehicle, Mich. Comp. Laws § 750.227(2), and possessing a prohibited weapon (muffler or silencer), Mich. Comp. Laws § 750.224. Petitioner was sentenced

to five years probation.

Petitioner filed a motion for new trial and evidentiary hearing on the ground that his trial attorney was ineffective in the following ways: (i) failing to conduct adequate *voir dire*; (ii) opening the door to damaging testimony through his cross-examination of prosecution witness Loe; (iii) improperly advising him not to testify; (iv) irritating the trial court by his courtroom demeanor; and (v) making unreasonable strategic decisions. The trial court held that an evidentiary hearing was not necessary because even assuming the truth of Petitioner's allegations he could not establish that he was prejudiced by his attorney's representation. The trial court denied the motion for new trial and evidentiary hearing.

Petitioner filed an appeal of right in the Michigan Court of Appeals presenting the following claims:

I.  Whether defendant was denied the effective assistance of counsel and the trial court erred in rejecting his claim to that effect without holding the evidentiary hearing which he requested?

II. Whether the trial court's instruction adequately presented the jury with the elements of the offense of unlawful possession of a silencer, so that defendant's conviction of that offense was therefore a violation of his Fifth and Sixth Amendment rights?

The Michigan Court of Appeals affirmed his convictions. People v. Goldy, No. 246501, 2004 WL 1392404 (Mich. Ct. App. June 22, 2004).

Petitioner sought leave to appeal in the Michigan Supreme Court. The Michigan Supreme Court denied leave to appeal. People v. Goldy, 472 Mich. 877 (Mich. 2005).

Petitioner then filed the pending petition for a writ of habeas corpus presenting the following claim for relief:

4

Petitioner was denied the effective assistance of counsel, and a fair hearing on his Sixth Amendment claims by the Michigan courts' failure to grant him the evidentiary hearing which he requested.

On January 24, 2008, this Court held an evidentiary hearing on Petitioner's ineffective assistance of counsel claim.

## II. Discussion

### A. Standard of Review

Section 2254(d) of Title 28 U.S.C., imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 410-11.

## B. Ineffective Assistance of Counsel Claims

Petitioner alleges that his trial attorney was ineffective in a number of respects. Specifically, Petitioner argues that counsel was ineffective in the following ways: (i) counsel's *voir dire* was perfunctory and failed to engage the jurors in any meaningful dialogue; (ii) counsel's cross-examination of Detective David Loe opened to door to the admission of extremely prejudicial testimony; (iii) counsel failed to counter Detective Loe's testimony that he found a manual on how to build a homemade silencer in Petitioner's apartment; (iv) counsel failed to object to the improper cross-examination of Christopher Jones; (v) counsel failed to object to the trial judge's behavior, which included questioning witnesses; (vi) counsel failed to object to the jury instructions which did not convey the necessary intent; and (vii) counsel advised Petitioner not to testify in his own defense.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he

proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Strickland, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. Strickland, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. Rather, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

## 1.

Petitioner argues that counsel was ineffective in counseling Petitioner not to testify in his own defense. Petitioner maintains that his decision not to testify was based upon counsel's

incorrect advice that, if he testified, his testimony would open the door to testimony from Eric White that two months prior to Petitioner's arrest Petitioner had fired a weapon outfitted with a homemade silencer. Petitioner argues that, in the absence of his testimony, he was unable to admit into evidence a receipt for a barrel extender, which would have refuted the prosecutor's argument that the device in his Tech .22 was a silencer.

When the trial commenced, the issue of Eric White's possible testimony was addressed by the trial court. The trial court stated that, "I guess whether he's been, in the past, in possession of a silencer hasn't got anything to do with this particular case here." Tr., 10/22/02, p. 6. The trial court further stated, "[W]hether he may have owned [a silencer] in the past is more prejudicial than probative." Id. at p. 7. On the second day of trial, defense counsel sought clarification from the court as to whether Eric White's testimony would be admissible. The court held that, if Petitioner testified and denied ever firing the weapon with the silencer/barrel extender attached, then White's testimony would become pertinent because it would be relevant to Petitioner's credibility. *See* Tr., 10/24/02, pp. 7-9.

The Michigan Court of Appeals denied this claim, but appears to have misapprehended the claim actually asserted. The state court characterized Petitioner's claim as follows: "defendant claims his counsel was ineffective because he initially told the jurors that defendant would testify, but subsequently talked defendant out of testifying." Goldy, 2004 WL at * 3; slip op. at 3. The state court reasoned, in pertinent part:

> [T]he record plainly establishes that defendant stated it was his choice not to testify. It is entirely possible that counsel and defendant changed their strategy concerning the wisdom of offering defendants' testimony as they assessed the strength of the evidence. This sort of strategic decision is one that we do not

> second guess. . . . . In any event, the mere fact that the jurors were initially told
> defendant would testify and then later became aware that he changed his mind is
> insufficient to establish the prejudice that is necessary to prevail on a claim of
> ineffective assistance.  Strickland, *supra* at 693; . . . The jury was specifically
> instructed that it was not to consider the fact that defendant chose to invoke his
> right not to testify, and we must assume that the jury followed this instruction.

Id.

Thus, the court of appeals failed to address the claim actually presented by Petitioner,
that counsel's advice not to testify was based upon a mistaken belief that Eric White's testimony
would then be admissible.  Where a claim is fairly presented in state court, but the state court,
although denying the claim, fails to address it, a federal court on habeas review must conduct an
independent review of the state court's decision.  Harris v. Stovall, 212 F.3d 940 (6th Cir. 2000).
This independent review requires the federal court to "review the record and applicable law to
determine whether the state court decision is contrary to federal law, unreasonably applies
clearly established law, or is based on an unreasonable determination of the facts in light of the
evidence presented."  Id. at 943.  However, the independent review "is not a full, *de novo* review
of the claims, but remains deferential because the court cannot grant relief unless the state court's
result is not in keeping with the strictures of the AEDPA."  Id.

First, Petitioner seems to argue that the trial court's ruling at the beginning of the trial
regarding Eric White's testimony precluded the trial court from revisiting the issue.  In fact, the
Court knows of no rule or case law which precluded the court from revisiting its previous ruling.

Second, Petitioner argues that the prosecutor could not have sought admission of White's
testimony by asking Petitioner whether he previously fired the Tech .22.  If Petitioner said he
had not previously fired the Tech .22, Petitioner argues, the prosecutor could not have admitted

White's testimony as impeachment evidence because, according to Petitioner, "a party cannot open his or her own doors to the admission of otherwise inadmissible evidence." Petitioner's Brief at p. 21. This argument is unpersuasive. "[A] defendant's choice to take the stand carries with it serious risks of impeachment and cross-examination; it may open the door to otherwise inadmissible evidence which is damaging to his case." Brooks v. Tennessee, 406 U.S. 605, 609 (1972) (quotation omitted). Petitioner cites May v. Keshishian, 12 Mich. App. 523, 26 (1968), in support of his claim that a basic rule exists that a party may not open its own door for otherwise inadmissible evidence. However, May dealt specifically with the application of the so-called dead man's statute and is thus inapposite to this case

Third, Petitioner argues that counsel should have argued that Michigan Rule of Evidence 608(b) would have precluded admission of this extrinsic impeachment evidence. "MRE 608(b) generally prohibits impeachment of a witness by extrinsic evidence regarding collateral, irrelevant, or immaterial matters[.]" People v. Spanke, 254 Mich. App 642, 644; 658 NW2d 504 (2003). During the evidentiary hearing, defense counsel testified that he did not present the court with any case law in support of his argument that White's testimony should not be admitted as impeachment evidence. Given that the trial court judge already had ruled that Eric White's proffered testimony was irrelevant to the matter at issue in this case, it is reasonably probable that, if presented with Rule 608(b) and his prior ruling, the trial court would have ruled that White's testimony could not be used to impeach Petitioner on this collateral matter. Defense counsel offered no explanation which would support a finding that his failure to cite Rule 608(b) was the result of sound trial strategy. Thus, the Court concludes that counsel's performance was

deficient.

The Court next considers whether Petitioner was prejudiced by the decision not to testify. During the evidentiary hearing, Petitioner showed himself to be a very strong witness in his own defense. Had he testified at trial, Petitioner would have explained how the gun came to be in his trunk, and testified that it was not loaded. He also would have authenticated the receipt from his home office for the purchase of a barrel extender. In addition, Petitioner testified that the sole reason he ultimately was persuaded not to testify was his fear that his testimony would open the door to Eric White's testimony. Based upon his demeanor and the substance of his testimony, this Court finds that his testimony was credible and would have considerably bolstered his defense.

Thus, the Court concludes that counsel's failure to argue that White's testimony should be excluded under Rule 608(b) constituted deficient performance and that Petitioner was prejudiced by counsel's deficient performance.

## 2.

Petitioner next argues that his attorney was ineffective in failing to object to the jury instructions which did not convey the necessary intent for the offense of possession of a prohibited weapon. Mich. Comp. Laws § 750.224 prohibits a person from manufacturing, selling, offering for sale, or possessing, inter alia, a muffler or silencer. A "muffler" or "silencer" is defined as "[a] device *for* muffling, silencing, or deadening the report of a firearm." Mich. Comp. Laws § 750.224(4)(a) (emphasis supplied) Petitioner argues that the use of the word "for" connotes intent. That is, that the prosecution bore the burden of proving that Petitioner not

only possessed a silencer, but knew that it was designed, intended or to be used for the purpose

of silencing or muffling the report of a firearm.  Petitioner maintains that the jury instructions

failed to require a finding that Petitioner knew the silencer was intended to be used for the

purpose or silencing or muffling the report of a firearm.

The trial court gave the following instruction:

[T]he defendant is also charged with the crime of possessing a muffler or silencer.
A muffler or silencer is a device for deadening or muffling the sound of a firing
gun.  Now, to prove this charge, the prosecution must prove each of the following
elements beyond a reasonable doubt:

First, that the defendant knowingly possessed a muffler or silencer.

And second, that at the time he possessed it, the defendant knew that the muffler
or silencer was a weapon.

Tr., 10/25/02, p. 46.

Petitioner acknowledges that this instruction was taken directly from the Michigan

Standard Jury Instructions, CJI2d 11.29; but argues that it nevertheless was inadequate to convey

the intent element of the crime.

The Michigan Court of Appeals rejected this claim on two grounds.  First, the state court

held that the instruction was sufficient to inform the jurors of the offense.  Second, the state court

found that even if the instruction were insufficient, Petitioner failed to show that he was

prejudiced by the instruction because the evidence clearly established Petitioner's knowing and

intentional possession of the silencer.  Goldy, 2004 WL at * 2, slip op. at 3.

In Staples v. United States, 511 U.S. 600 (1994), the Supreme Court considered the intent

element for a crime whose statutory construction was similar to that found in Mich. Comp. Laws

§ 750.224(4)(a). At issue in <u>Staples</u> was the following section of the National Firearms Act::

"[i]t shall be unlawful for any person ... to receive or possess a firearm which is not registered to

him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). Section

5861(d) is silent concerning the *mens rea* required for a violation. Noting that "[t]he existence

of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American

criminal jurisprudence," the Court held that "some indication of congressional intent, express or

implied, is required to dispense with *mens rea* as an element of a crime." <u>Id.</u> at 605-06 (internal

quotation omitted). The Court concluded that, because there was no indication of congressional

intent to dispense with the *mens rea* requirement with regard to § 5861(d), the prosecution was

required to prove that a defendant was aware of the features of the firearm which made its

possession illegal under § 5861(d). The Sixth Circuit Court of Appeals recently approved a

district court's application of <u>Staples</u> to a charge of unlawful possession of a silencer, requiring a

specific finding that the defendant knew the device fell within the statutory definition of a

silencer. <u>United States v. Rose</u>, – F.3d –, No. 06-1642 (6th Cir. March 26, 2008).

Michigan courts also "recogniz[e] the longstanding principle that a criminal statute is

presumed to include a criminal intent or *mens rea*, absent an express or implied indication that

the Legislature wanted to dispense with it." <u>People v. Nyx</u>, 479 Mich. 112, 133 n.50 (Mich.

2007). "This rule is presumed because otherwise innocent conduct would be criminalized." <u>Id.</u>

Given the Supreme Court's <u>Staples</u> opinion, the Sixth Circuit's application of <u>Staples</u> to a

charge of unlawful possession of a silencer, and the Michigan court's rule presuming that

criminal statues include an intent element, counsel's failure to at least preserve for direct review

the question of the adequacy of jury instructions was outside the wide range of reasonably

competent assistance. When discussing jury instructions, defense counsel argued that Mich.

Comp. Laws § 750.224 required that a defendant *know* that the device possessed was a silencer

or muffler. However he failed to propose an instruction to convey this element to the jury. At

the evidentiary hearing, defense counsel testified that the trial court rejected his proposal that any

instruction other than the standard jury instruction be given. Counsel admitted, however, that he

failed to place on the record an objection to the instructions given.

The Michigan Court of Appeals rejected this ineffective assistance of counsel claim on

the following grounds:

> Defendant further claims that his counsel was not effective because he failed to
> request an instruction on the intent element of possession of a silencer. While, as
> we subsequently explain, the propriety of the silencer possession instruction is not
> properly before us, we observe that the evidence clearly established defendant's
> knowing and intentional possession of an article shown to be a silencer.
> Therefore, even if the instruction was flawed, defendant has failed to demonstrate
> that he was prejudiced by the instruction. Furthermore, the general instruction
> that was given without objection was sufficient to inform the jurors of the
> elements of the offense.

Goldy, slip op. at p. 3.

The state court's finding that the instruction sufficiently informed the jurors of the

elements of the offense is flawed. Petitioner argues that the instruction should have required the

prosecution to prove that Petitioner was aware of "'the features' of the device alleged to be a

silencer 'that brought it within the scope of' M.C.L. 750.224; *i.e.*, that it was "[a] device for

muffling, silencing, or deadening the report of a firearm." Petitioner's Brief at p. 18, n.12. The

Court finds that it was an unreasonable determination of the facts for the state court to find that

the instructions conveyed this requirements. Therefore, the Court finds that counsel was ineffective in failing to object to the instruction.

The Michigan Court of Appeals' second basis for rejecting this claim improperly invaded the province of the jury. <u>Barker v. Yukins</u>, 199 F.3d 867, 874 (6th Cir. 1999). The Sixth Amendment protects the defendant's right to trial by an impartial jury, which includes "as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.'" <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 277 (1993). This right is further interpreted as prohibiting judges from weighing evidence and making credibility determinations, leaving these functions for the jury. <u>Barker</u>, 199 F.3d at 874. Here, the jury was never advised of and, therefore, never considered whether Petitioner intended to possess a silencer. The state court's independent assessment of the evidence and conclusion that Petitioner had the requisite intent violated Petitioner's right to have the jury reach the requisite finding of guilt.

The evidence that Petitioner knowingly possessed a silencer was far from overwhelming. The Court finds that there is a reasonable likelihood that, had the jury been advised that petitioner had to possess a device he knew to be a silencer, the result of the proceeding would have been different. Thus, the Court finds that counsel was ineffective in failing to object to the instruction as given and in failing to offer an instruction which adequately conveyed the intent requirement and that Petitioner was prejudiced by his attorney's error.

**3.**

Petitioner challenges his attorney's handling of *voir dire*. He argues that counsel's questioning of jurors was "perfunctory and unproductive . . . wholly failing to engage the jurors

in any meaningful dialogue whatsoever."  Petitioner's Brief at p. 7.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."  U.S. Const. amend. VI.  The right to an impartial jury is made applicable to the states by the Fourteenth Amendment.  Turner v. Louisiana, 379 U.S. 466 (1965).  Jury *voir dire* "is designed 'to protect [this right] by exposing possible biases, both known and unknown, on the part of potential jurors.'"  Dennis v. Mitchell, 354 F.3d 511, 520 (6th Cir. 2003).

"The Constitution . . . does not dictate a catechism for *voir dire*, but only that the defendant be afforded an impartial jury."  Morgan v. Illinois, 504 U.S. 719, 729 (1992).  Nevertheless, "part of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors."  Id.  Supervision of *voir dire*, for the most part, is left to a trial courts "sound discretion."  Ristaino v. Ross, 424 U.S. 589, 594 (1976), *quoting* Connors v. United States, 158 U.S. 408, 413 (1895).  The exercise of the trial court's discretion is "subject to he essential demands of fairness."  Aldridge v. United States, 283 U.S. 308, 310 (1931).  "The Constitution requires only that *voir dire* be conducted in a manner which ensures fundamental fairness."  Dennis, 354 F.3d at 524.

The Michigan Court of Appeals observed that the trial court and the prosecutor questioned the jurors at length and comprehensively and held that counsel's *voir dire* questioning was "direct, pertinent, and brief, but not inadequate."  Goldy, 2004 WL 1392404, slip op. at 2.

Petitioner submits no evidence that his jury was partial or unfair, or that any particular

juror was biased.  Petitioner elicited no testimony at the evidentiary hearing regarding *voir dire*.

As observed by the Michigan Court of Appeals, a review of the record indicates that the trial

court conducted a relatively comprehensive *voir dire*.  There were no issues of pretrial publicity,

race, or other hot-button issues which might necessitate a more exhaustive *voir dire*.  The trial

judge asked specific and pertinent follow-up questions of individual jurors whose answers to his

general questions may have raised questions of impartiality.  Defense counsel displayed no

dissatisfaction with the jury impaneled.

Thus, the Court concludes that Petitioner has not shown that he was prejudiced by his

counsel's *voir dire* of the jury.

**4.**

Petitioner claims that counsel's cross-examination of the Detective David Loe, the officer

in charge of the case, opened the door to extremely prejudicial testimony, which otherwise

would have been inadmissible.  Petitioner points to the following exchange during counsel's

cross-examination of Detective Loe:

| | |
|---|---|
| Defense counsel: | Okay.  And you say that somehow you got a call and you [sic] said "Come on out here.  We want you to escort him off the premises." Is that correct? |
| Detective Loe: | They had concerns, yes. |
| Defense counsel: | Okay.  And, and your initial intent was to escort him off the premises, is that correct?  It requires you to say yes or no. |
| Detective Loe: | Not entirely. |

Tr., pp. 180-81.

On redirect examination, the prosecutor asked Detective Loe what he had meant when he

responded, "Not entirely."  Detective Loe responded, "Well, we had information that he had weapons in the car that specifically was a Tech .22 and a silencer. . . . They were concerned about his becoming violent."  Tr., pp. 189-90.

The Michigan Court of Appeals addressed this claim in a conclusory fashion, concluding, with little analysis, that there was no basis for concluding counsel was ineffective in his cross-examination of Detective Loe.  Goldy, 2004 WL at *2, slip op. at 2.

Even assuming that counsel erred in opening the door to this testimony, the Court finds that Petitioner fails to satisfy the prejudice prong of Strickland.  In making a prejudice determination, "the court reconsiders how the balance of evidence would have stood, but for counsel's errors."  Bridges v. Cason, 198 Fed. Appx. 491, 495 (6th Cir. 2006).

At trial, Petitioner did not dispute that he had a weapon in his vehicle on the day of his arrest.  He also did not dispute that he owned the Tech .22 which was found in his home.  Thus, Detective Loe's testimony is only potentially prejudicial on two points: that Mahle employees were concerned Petitioner would become violent and that police had information Petitioner might possess a silencer.  Prior to Detective Loe's testimony on redirect, the jury already had heard that the Human Resources Department at Mahle Technologies requested a police presence to escort Petitioner from the building.  Thus, the jury likely already inferred that Mahle employees feared Petitioner in some way.  In addition, the testimony that police believed Petitioner had a silencer did not make Petitioner's defense that it was actually a legal barrel extender any more or less believable.  The Court finds that Detective Loe's short explanation for his presence at Mahle Technologies did not impact the balance of evidence presented at trial.

Therefore, the Court concludes that the Michigan Court of Appeals' application of <u>Strickland</u> was not contrary to or an unreasonable application of Supreme Court precedent.

Petitioner additionally asserts in a footnote that counsel's opening statement also opened the door to prejudicial testimony from Detective Loe about the firearms, other than the two at issue in this case, found at Petitioner's home. Petitioner admits that this claim is not properly exhausted, *see* Petitioner's Brief at p. 9-10, n.6; the Court, nevertheless, will address the merits of this claim. Prior to trial, the trial court ruled that the prosecutor could not elicit testimony abut the other, properly-licensed firearms found in Petitioner's home unless the issue was raised by defense counsel. In his opening statement, defense counsel stated that Petitioner legally owned all of the firearms in his home, some of which he had owned for as long as twenty-five years. The trial court held this opened the door for testimony by Detective Loe regarding all of the firearms found in Petitioner's home. This led to Detective Loe's testimony that other firearms were found in Petitioner's home and that they were all legal. Petitioner admits that this testimony was "relatively benign." Petitioner's Brief at p. 10, n.6. The Court finds that this testimony did not prejudice Petitioner and advanced a claim of long-standing, responsible gun ownership.

**5.**

With respect to Detective Loe's testimony, Petitioner also alleges that counsel was ineffective in failing to counter Detective Loe's testimony that he found a manual on how to build a homemade silencer in Petitioner's apartment. On redirect examination, Detective Loe testified as to finding the manual, stated that he did not confiscate the manual, and admitted that

that was an error.  Petitioner argues that his attorney should have elicited on cross-examination that this manual was not listed in Detective Loe's investigative reports.

The Michigan Court of Appeals held that counsel's conduct in failing to cross-examine Detective Loe about the manual evidenced a trial strategy not to emphasize the manual in the jurors' minds.  Goldy, 2004 WL at *2, slip op. at 2.  The Court finds the court of appeals' assessment in this regard was not an unreasonable application of Strickland.  Where Detective Loe admitted that failing to seize the manual was a mistake, it was unlikely that, on cross-examination, defense counsel would succeed in getting Detective Loe to testify in such a way as to call into question whether he actually saw a manual or simply fabricated its existence.  Given the potential downside to highlighting this testimony for the jury, it was not unreasonable for defense counsel to conclude that it was better not to focus on the testimony regarding the manual.  Thus, Petitioner has failed to rebut the presumption, mandated by Strickland, that counsel's action was the result of sound trial strategy.

**6.**

Next, Petitioner claims that counsel was ineffective in failing to object to the improper cross-examination of Christopher Jones.  On cross-examination, Jones was asked whether he was aware that Petitioner's employment was going to be terminated because Petitioner could not provide proof that he had earned a Master's Degree.  Jones said he was not aware of that.  On redirect, Jones stated that he had previously seen Petitioner's diploma.  Defense counsel then attempted to admit a copy of Petitioner's diploma through Jones.  The trial court would not allow its admission.  Defense counsel remarked that he would "wait for [his] client," presumably to

authenticate the document.

Petitioner argues that counsel should have objected to the prosecutor's question regarding the diploma. The Michigan Court of Appeals concluded that the failure to object was a matter of trial strategy and that Petitioner was not prejudiced by the question. Petitioner fails to make any specific claim regarding how this testimony prejudiced him. It was undisputed by Petitioner that his employment was terminated by Mahle. This brief reference to an issue regarding whether Petitioner earned a Master's Degree did not impact the balance of evidence in this case. Therefore, the Court finds no error in the court of appeals' application of Strickland.

## 7.

Petitioner argues that his attorney was ineffective in failing to object to the trial judge's conduct throughout trial. Petitioner claims that "the trial judge found counsel's halting and slack-jawed presentation a source of irritation, which apparently prompted him to react in a variety of ways, all prejudicial to the petitioner's cause." Petitioner's Brief at p. 11. Petitioner argues that the trial judge was so frustrated with defense counsel's performance that he intruded on the defense case much more than he had the prosecution's by, for example, interrupting the questioning of Petitioner's firearms expert, cross-examining a witness, and admonishing counsel in front of the jury.

The Michigan Court of Appeals held that Petitioner's claims that the trial judge acted inappropriately were unfounded:

> Contrary to defendant's characterization, the record does not indicate that the trial
> court was disrespectful. The court specifically disclaimed any irritation with trial
> counsel and the record bears this out; in fact, the record contains numerous
> examples of the trial court showing respect and consideration to trial counsel, and

> emphasizing that defendant was entitled to a fair and full trial. To the extent that
> the trial court interjected its own questions of the witnesses, it was generally
> because the testimony of the witnesses was confusing and had to be clarified. The
> trial court has broad discretion with respect to controlling trial proceedings, . . .
> and defendant has not established an abuse of the trial court's discretion.

Goldy, slip op. at p. 2.

This Court has reviewed the entire trial court transcript, which shows that the trial judge at times took an active role in management of the trial. This Court concurs with the Michigan Court of Appeals' conclusion that the trial judge's conduct did not evidence the disrespect or bias claimed by Petitioner. Therefore, Petitioner cannot show that his attorney was ineffective in failing to object to the trial judge's conduct.

**8.**

In many cases where the Court has found a defense attorney was constitutionally ineffective, defense counsel's representation evidenced a pervasive lack of preparation, lack of investigation, and insufficient knowledge of the law. This case, however, does not fall into that category. In this case, defense counsel clearly prepared for trial and, throughout trial, made decisions that were based upon an honest attempt to best represent his client's interests. Unfortunately, despite defense counsel's best efforts, decisions were made which were not the result of sound trial strategy, but, instead, were simply mistakes which served to prejudice Petitioner. Accordingly, the Court reaches the conclusion that counsel was ineffective as set forth above.

## C. Relief

A federal habeas court has broad discretion in conditioning a judgment granting habeas relief. Hilton v. Braunskill, 481 U.S. 770, 775 (1987). A federal district court has the authority, in a habeas corpus proceeding, to order the expungement of a habeas petitioner's criminal records. *See* Gentry v. Deuth, 456 F.3d 687, 695-97 (6th Cir. 2006) ("As a practical, logical, and necessary matter, relief from the collateral consequences of an unconstitutionally obtained state criminal conviction effectively requires expungement of the conviction from the petitioner's record, and expungement of the record implies nullification of the unconstitutional conviction."). In this case, Petitioner's convictions are constitutionally invalid. However, the Court cannot order Petitioner's immediate release from custody because Petitioner is no longer in custody pursuant to these convictions. Therefore, in light of the fact that he has served his full term of probation on these convictions, the Court determines the fair and just relief in this case to require these convictions and all of the effects stemming from them completely expunged from Petitioner's record. *See* Ward v. Wolfenbarger, 340 F. Supp.2d 773, 775-76 (E.D.Mich. 2004), *cited with approval in* Turner v. Bagley, 401 F.3d 718, 727 (6th Cir. 2005).

### III.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **GRANTED**.

**IT IS FURTHER ORDERED** that the judgment of conviction against Petitioner for the offenses of carrying a concealed weapon in a vehicle and possessing a prohibited weapon (muffler or silencer) from the Oakland County Circuit Court are vacated and the record of conviction shall be expunged. The Clerk of the Circuit Court of Oakland County, Michigan shall forward a copy of this Court's order to any person or agency that was notified of petitioner's arrest or conviction involved with these offenses.  A certificate of compliance shall be filed with this Court within 30 days of the receipt of this order.


S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  April 18, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 18, 2008, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary